Air Line Pilots v. Pan American          CV-02-593-M    01/06/04
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Air Line Pilots Association,
International,
      Plaintiff

      v.                                   Civil No. 02-593-M
                                           Opinion No. 2004 DNH 002
Pan American Airways Corp.,
      Defendant


                          **O R D E R**


      The Air Line Pilots Association, International ("the

Association"), has sued Pan American Airways Corp. ("Pan Am"),

under 29 U.S.C. § 2101 et seq. (the "WARN Act") for failing to

provide sixty days notice in advance of implementing a layoff

that occurred between September 5 and October 4, 2002.  Before

the court is plaintiff's motion for summary judgment, to which

defendant objects.  For the reasons given below, plaintiff's

motion for summary judgment is necessarily denied.


      Summary judgment is appropriate when the record reveals "no

genuine issue as to any material fact and . . . the moving party

is entitled to a judgment as a matter of law."  FED. R. CIV. P.

56(c).  In defending against a motion for summary judgment,

"[t]he non-movant may not rely on allegations in its pleadings, but must set forth specific facts indicating a genuine issue for trial." Geffon v. Micrion Corp., 249 F.3d 29, 34 (1st Cir. 2001) (citing Lucia v. Prospect St. High Income Portfolio, Inc., 36 F.3d 170, 174 (1st Cir. 1994)). When ruling upon a party's motion for summary judgment, the court must "scrutinize the summary judgment record 'in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor.'" Navarro, 261 F.3d at 94 (quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)).

Here, on the current record at least, there appear to be genuine disputes as to material facts. At the outset, the parties do not agree that the layoffs Pan Am instituted between September 5 and October 4, 2002, constituted a "mass layoff" within the meaning of 29 U.S.C. § 2101(a)(3)(B). To determine whether there was a mass layoff, it is first necessary to know how many people Pan Am employed at its Portsmouth, New Hampshire, facility sixty days prior to the first layoff in the thirty-day layoff period. And it is necessary to know how many employees

were laid off.  Plaintiff has not established how many people Pan Am employed at its Portsmouth facility sixty days before the first layoff.[1]

However, one question of law can be resolved at this point. In counting the total number of employees working at, and the number of employees laid off from, Pan Am's Portsmouth site of employment, flight crew members based at Stanford, Florida, are not to be counted.

Plaintiff argues to the contrary, in reliance upon Wiltz v. M/G Transport Services, Inc., 128 F.3d 957 (6th Cir. 1997).  In Wiltz, the court held that a river barge company's Paducah, Kentucy, home office was the site of employment for crew members working on barges that traveled from Pittsburgh to New Orleans. Id. at 961.  The question presented in Wiltz was whether Paducah,

_____

[1] Plaintiff concedes that July 7, 2002, is the correct date for counting Pan Am's employees for WARN Act purposes. Accordingly, to prevail on summary judgment, plaintiff bears the burden of establishing the number of employees Pan Am had at its Portsmouth facility.  It is not enough to argue, as plaintiff does, that if there were a significant difference between the employment figures it referred to in its motion for summary judgment and the actual employment figures, "Pan Am would certainly have said so."  (Reply. Br. in Supp. of Pl.'s Mot. Summ. J. (document no. 13) at 4.)

3

or the particular barge on which an employee worked, was that employee's site of employment.  Id. at 960.

Here, however, neither the Association nor Pan Am argues that a pilot's site of employment is the plane he or she flies. Rather, Pan Am argues that the site of employment for pilots and flight crew members is their home base, in either New Hampshire or Florida.  The facts of this case are analogous to those in Teamsters Local Union 413 v. Driver's, Inc., 101 F.3d 1107 (6th Cir. 1996), in which the court of appeals held that a trucking company operating trucks from eleven terminals had eleven different sites of employment with respect to its truck drivers. The court reached its conclusion despite the fact that "[t]he drivers at the eleven terminals received their route assignments from dispatchers located at the PPG Transportation Center in Delaware, Ohio . . . ."  Id. at 1108.  In Driver's, Inc., the question presented was "whether multiple facilities operated by the same employer constitute a 'single site' under the [WARN] Act."  Id. at 1109.  The question presented here is similar: whether the site of employment of flight crews based in Florida and New Hampshire is New Hampshire?  Based upon the reasoning of

4

both Driver's, Inc. and Wiltz, it is not New Hampshire. "In both Driver's, Inc. and Wiltz, the employees' home bases were the sites where they began and ended their business trips." Ciarlante v. Brown & Williamson Tobacco Corp., 143 F.3d 139, 147 (3d Cir. 1998). And in each case, the court ruled that the home base constituted the site of employment for WARN Act purposes as well. Here, Pan Am flight crew members are based in either Portsmouth, New Hampshire, or Stanford, Florida, where they take charge of an aircraft and fly an assigned route. Their work routinely ends upon return of the aircraft to the home base. As in Driver's Inc., a Florida-based pilot's site of employment is in Florida – where the scheduled flights routinely begin and end, and where the pilot is based.

A contrary ruling would be inconsistent with the most logical reading of the relevant regulation, which provides as follows:

> For workers whose primary duties require travel from point to point, who are outstationed, or whose primary duties involve work outside any of the employer's regular employment sites (e.g., railroad workers, bus drivers, salespersons), the single site of employment to which they are assigned as their home base, from which their work is assigned, or to which they report

5

> will be the single site in which they are covered for
> WARN purposes.

20 C.F.R. § 639.3(i)(6). Plaintiff argues that under that regulation Portsmouth is the site of employment for all flight crew members, because all flight crew assignments and instructions originate in Portsmouth, without regard to where a particular flight crew might be based. While § 639.3(i)(6) is "written in the disjunctive," Wiltz, 128 F.3d at 961, it does not set out a test that is met by proving any one of its three parts. Rather, it describes touchstones for the court to consider in determining, as a matter of law, the site of employment for employees who travel as a part of their jobs. See Driver's, Inc., 101 F.3d at 1109.

Here, the Florida-based flight crews receive work assignments from New Hampshire. Thus, each party can meet one of the three § 639.3(i)(6) factors. The problem, then, lies in assigning relative weight to the identified factors. The Driver's, Inc. court examined the legislative history of the WARN Act and determined that "geographical considerations are the strongest factors in determining whether separate facilities

6

owned or operated by the same employer are considered single or separate sites under the Act." 101 F.3d at 1110. The structure of § 639.3(i)(6) itself provides an even stronger basis for deciding between "home base" and "source of assignments" when identifying a traveling employee's site of employment.

To determine a traveling employee's site of employment, the court should first determine whether the employee has a home base. If so, that is his or her site of employment. If not, then the site of employment is the place from which his or her work is assigned. And if, somehow, an employee has no home base, and no location qualifies as the place from which work is routinely assigned, then the employee's site of employment is the place to which he or she reports. Here, each flight crew member has a home base, and, as a matter of law, that home base constitutes his or her site of employment for WARN purposes.

Because plaintiff has yet to establish the number of workers employed by Pan Am at its Portsmouth site of employment, and has not established how many of those employees were laid off, summary judgment is not available on the record as currently

developed.  However, it does appear that this matter is amenable to resolution on summary judgment.  The relevant facts related to employees should be matters of record beyond dispute.

However, another issue of law might need to be decided before summary judgment may be entered, i.e., the status of flight crew members who worked less than twenty hours per week. If plaintiff intends to count those employees, it will be necessary to establish that they are countable, notwithstanding hours of work that suggests part-time employment under the applicable statute.

For the reasons given above, plaintiff's motion for summary judgment (document no. 9) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

January 6, 2004

cc:  Jerry D. Anker, Esq.
     R. Matthew Cairns, Esq.
     Andrew W. Serell, Esq.